IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs May 2, 2017

## STATE OF TENNESSEE v. MONTREAL PORTIS ROBINSON

**Appeal from the Circuit Court for Madison County**
**No. 16-38     Kyle Atkins, Judge**

_____

### No. W2016-01949-CCA-R3-CD

_____

The Defendant, Montreal Portis Robinson, was convicted by a Madison County Circuit Court jury of aggravated robbery, a Class B felony, and robbery, a Class C felony. He was sentenced to eight years for the aggravated robbery conviction and three years for the robbery conviction, to be served consecutively in the Tennessee Department of Correction for an effective term of eleven years. On appeal, the Defendant challenges the sufficiency of the evidence convicting him of aggravated robbery and the trial court's imposition of consecutive sentences. After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and J. ROSS DYER, JJ., joined.

Lee R. Sparks, Jackson, Tennessee, for the appellant, Montreal Portis Robinson.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Aaron J. Chaplin, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

The Defendant, Montreal Portis Robinson, and a co-defendant, Corinthian Person, were charged with two counts of aggravated robbery stemming from the robberies of Matthew Leonard and Chad Roaten during a drug transaction.[1] The charge involving Mr. Roaten as the victim was amended to robbery before trial.

_____

[1] Because there are two victims, we will refer to each by name.

At trial, Chad Roaten testified that on the evening of May 12, 2015, he went with Matthew Leonard to cash Mr. Leonard's paycheck. After cashing the check, they stopped at a gas station and, while there, saw the Defendant and co-defendant pull up in a white Jeep. Mr. Roaten knew the co-defendant from having attended elementary school together, and they started talking. The co-defendant offered to sell them some marijuana, and Mr. Leonard agreed. The co-defendant told them to follow him "to Bemis Park where there's no cameras."

Mr. Roaten testified that Mr. Leonard drove to Bemis Park, following the Defendant and co-defendant. When they arrived, Mr. Leonard got out of his car and into the Defendant's and co-defendant's vehicle, and the co-defendant got into Mr. Leonard's car. Mr. Roaten and the co-defendant made small talk about school, and then the co-defendant went back to the other vehicle. The co-defendant then returned saying Mr. Leonard owed some money and that they should "give it up." Mr. Roaten said that he did not have any money and did not know what the co-defendant was talking about. The co-defendant went back to the other car and this time returned with the Defendant. The Defendant got into the driver's seat of Mr. Leonard's car, and the co-defendant blocked Mr. Roaten's door so that he could not exit. The Defendant informed Mr. Roaten, "'This guy knows what's happening. He knows he owes somebody some money. He told us it's in this car. Go ahead and give it up.'" Mr. Roaten got the money out of the glove box and handed it to the Defendant. The Defendant then patted down Mr. Roaten, taking his cell phone, knife, and car keys after making sure he had no money in his wallet. The Defendant told him that they would leave the phone and car keys by "the red building" but were taking the money. The co-defendant stood outside Mr. Roaten's car door the entire time. Mr. Roaten said that he was in fear during the encounter and did not feel he could leave.

Mr. Roaten testified that Mr. Leonard returned to his car "freaking out," saying that a gun had been held to his head. Mr. Roaten said that he could tell that a third person was in the Defendant's and co-defendant's vehicle, but he could not see the individual. After the robbers left, Mr. Roaten looked by the red building for his phone and car keys, but they were not there. Meanwhile, Mr. Leonard knocked on the door of a police officer who lived nearby. The police arrived, and Mr. Roaten told the officers who had robbed them. Mr. Roaten pulled up the co-defendant's profile on Facebook in order to recall his full name and later identified him from a photographic array. Sometime later, Mr. Roaten identified the Defendant from a photographic array as well.

Mr. Leonard testified consistently with Mr. Roaten regarding the events leading up to and during the robbery. Mr. Leonard elaborated that, when he got into the Defendant's and co-defendant's vehicle, someone in the seat behind him put an arm around his neck

-2-

and a gun to his head. The person demanded that Mr. Leonard hand over his money and said he knew that Mr. Leonard had just cashed his paycheck. Mr. Leonard eventually admitted to the robbers that he had about $360 in the glove box of his car. Mr. Leonard was unable to identify the Defendant from a photographic array, elaborating that "[t]he pictures were kind of dark and you couldn't really see that good." However, Mr. Leonard identified the Defendant at trial.

Officer Bobby Locke with the Jackson Police Department responded to the robbery call and took an initial report. Officer Locke recalled that Mr. Roaten and Mr. Leonard were very nervous.

Investigator Nicholas Donald with the Major Crimes Unit of the Jackson Police Department also responded to the scene of the incident. Investigator Donald recalled that Mr. Roaten and Mr. Leonard were "very upset and distraught." At that time, Mr. Roaten identified the co-defendant by pulling up the co-defendant's Facebook page, and Mr. Leonard made a positive identification of the co-defendant from that as well. Approximately one month later, the Defendant was developed as a suspect after it was learned that he was a known associate of the co-defendant and had access to a white Jeep vehicle. Investigator Donald prepared a six-person photographic array that he showed to Mr. Roaten and Mr. Leonard on consecutive days. Mr. Roaten identified the Defendant immediately. However, when the array was shown to Mr. Leonard, Mr. Leonard "kept looking at the pictures and he said, 'I'm not sure, I'm not sure.'" On cross-examination, Investigator Donald stated that there were no problems with the photographs used in the array and that they were the type of photographs that were always used.

Mr. Leonard was also called to testify by the defense. When shown the photographic array from which he had been unable to make an identification, Mr. Leonard acknowledged that the photographs were clear and he could easily identify the facial features of the individuals in the photographs. Asked how he could point to the Defendant in court as the robber when he was unable to make a photographic identification, Mr. Leonard said, "Because I can see him in person. I mean, it looks a lot different than on a picture than in person." Mr. Leonard said that he was not relying on someone else's identification of the Defendant. He maintained that he was 100% certain that the Defendant was one of the individuals who robbed him.

Following the conclusion of the proof, the jury convicted the Defendant of the aggravated robbery of Matthew Leonard and robbery of Chad Roaten.

## ANALYSIS

### I. Sufficiency

The Defendant challenges the sufficiency of the evidence convicting him of aggravated robbery because the victim of that count, Matthew Leonard, was unable to identify him in a photographic array.

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). The same standard applies whether the finding of guilt is predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

A criminal offense may be established entirely by circumstantial evidence. State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010). It is for the jury to determine the weight to be given the circumstantial evidence and the extent to which the circumstances are consistent with the guilt of the defendant and inconsistent with his innocence. State v. James, 315 S.W.3d 440, 456 (Tenn. 2010). In addition, the State does not have the duty to exclude every other reasonable hypothesis except that of the defendant's guilt in order to obtain a conviction based solely on circumstantial evidence. See State v. Dorantes, 331 S.W.3d 370, 380-81 (Tenn. 2011) (adopting the federal standard of review for cases in which the evidence is entirely circumstantial).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary

instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1966) (citing Carroll v. State, 370 S.W.2d 523, 527 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

For the purposes of this case, aggravated robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear" that is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]" Tenn. Code Ann. §§ 39-13-401(a), -402.

The Defendant does not dispute that an aggravated robbery was committed upon Matthew Leonard but, instead, disputes the sufficiency of the evidence establishing him as a perpetrator of the offense. The identity of the perpetrator "is an essential element of any crime." State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006). The perpetrator's identity "may be established solely on the basis of circumstantial evidence." State v. Lewter, 313 S.W.3d 745, 748 (Tenn. 2010).

Although Mr. Leonard was unable to identify the Defendant from a photographic array prior to trial, Mr. Roaten identified the Defendant from a photographic array as well as in court. As was its province, it is apparent that the jury accredited Mr. Roaten's identifications of the Defendant, and the Defendant fails to acknowledge the importance of Mr. Roaten's identifications. In addition, Mr. Leonard identified the Defendant in court, stating he was 100% sure of his identification, and he explained why he had been unable to make a photographic identification. Again, as was its province, it is apparent that the jury accredited Mr. Leonard's testimony. We conclude that the evidence is sufficient to prove the Defendant's identity as the perpetrator of the aggravated robbery.

## II. Sentencing

The Defendant argues that the trial court erred in imposing consecutive sentences because his "adult criminal history reflect[s] only misdemeanor offenses."

The trial court conducted a sentencing hearing, at which the Defendant's presentence report was entered into evidence. The State also entered into evidence a

judgment against the Defendant for misdemeanor unlawful possession of a firearm and a juvenile adjudication for aggravated robbery. The State pointed out that the Defendant additionally had two other misdemeanor convictions for driving on a suspended license. The presentence report indicated that the Defendant also had juvenile adjudications for aggravated burglary and theft of property.

In determining the length of the Defendant's sentences, the trial court found that the Defendant had a previous history of criminal convictions or criminal behavior in addition to that necessary to establish the appropriate range and that he was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult. See Tenn. Code Ann. § 40-35-114(1), (16). The court did not find any mitigating factors. Accordingly, the trial court imposed a sentence of eight years for the aggravated robbery conviction and three years for the robbery conviction.

In determining that the Defendant's sentences should be served consecutively, the trial court found that the Defendant was an offender whose record of criminal activity was extensive, noting his juvenile adjudications and prior conviction for unlawful possession of a weapon. Id. § 40-35-115(b)(2). The court observed that the Defendant's past conviction for unlawful possession of a weapon was part of a continuing pattern of having a weapon, including the present offenses. The court found that the Defendant's record of offenses with a weapon made him a dangerous offender whose behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high. Id. § 40-35-115(b)(4). The court further found that the circumstances surrounding the offenses were aggravated, confinement for an extended period of time was necessary to protect society from the Defendant's unwillingness to lead a productive life, the Defendant's criminal activity furthered an anti-societal lifestyle, and the aggregate length of the sentences reasonably related to the offenses of which the Defendant was convicted. The court also observed that there was a lack of testimony regarding the Defendant's work history or any testimony that he was a productive member of society.

A trial court may order multiple sentences to run consecutively if it finds by a preponderance of evidence that one or more of the seven factors listed in Tennessee Code Annotated section 40-35-115(b) applies, including that the defendant is an offender whose record of criminal activity is extensive or that the defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high. Id. § 40-35-115(b)(2), (4). When the court bases consecutive sentencing upon its classification of the defendant as a dangerous offender, it must also find that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences reasonably relate to the severity of the offense committed.

State v. Lane, 3 S.W.3d 456, 460-61 (Tenn. 1999); State v. Wilkerson, 905 S.W.2d 933, 937-38 (Tenn. 1995). We review the trial court's consecutive sentencing determinations for abuse of discretion, with a presumption of reasonableness afforded to the trial court's decision. See State v. Pollard, 432 S.W.3d 851, 860 (Tenn. 2013) (applying same deferential standard announced in State v. Bise, 380 S.W.3d 682 (Tenn. 2012) to trial court's consecutive sentencing decisions).

The Defendant argues that consecutive sentencing was inappropriate because his adult criminal record consisted only of misdemeanors and his "last juvenile offense occurred over four years before the instant offense." However, Tennessee Code Annotated section 40-35-115(b)(2) does not specify that only a defendant's felony record may be taken into account but instead denotes "criminal activity." In fact, this court has previously found that the imposition of consecutive sentences was justified when a defendant's record of criminal activity consisted only of misdemeanors. See, e.g., State v. Edwin Dewan Reese, No. M2011-01692-CCA-R3-CD, 2012 WL 12931585, at *3 (Tenn. Crim. App. May 14, 2012); State v. Steven W. Black, No. E2010-00924-CCA-R3-CD, 2011 WL 208075, at *3 (Tenn. Crim. App. Jan. 13, 2011), perm. app. denied (Tenn. May 25, 2011); State v. James Clifford Wright, No. 01C01-9811-CC-00476, 1999 WL 994055, at *3 (Tenn. Crim. App. Oct. 29, 1999); State v. Mark Crites, No. 01C01-9711-CR-00512, 1999 WL 61053, at *6 (Tenn. Crim. App. Feb. 9, 1999). Moreover, the Defendant has a juvenile record that includes adjudications for aggravated robbery and aggravated burglary, which the trial court could also consider. See State v. Banks, 271 S.W.3d 90, 147 (Tenn. 2008) ("When determining whether sentences should run consecutively or concurrently, trial courts are not limited to considering the defendant's criminal activity or conduct that occurred after the defendant's eighteenth birthday."). The Defendant cites no authority for his argument that his juvenile record should not have been considered because his last juvenile offense occurred four years before the prior offenses. We discern no abuse of discretion in the trial court's decision to impose consecutive sentences based on the Defendant's extensive record of criminal activity. We need not address whether it was proper for the trial court to consider the Defendant a dangerous offender as the presence of only a single factor is sufficient to justify the imposition of consecutive sentencing.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE